**COAST–TO–COAST FINANCIAL CORPORATION, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 95–525C.**

United States Court of Federal Claims.

Oct. 14, 2004.

Melvin C. Garbow, Washington, D.C., for plaintiff Coast–To–Coast Financial Corporation. With him on the briefs were Howard N. Cayne, Kent A. Yalowitz, and Edward Sisson, all of counsel.

Scott Austin, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, for the United States. With him on the briefs were Stuart E. Schiffer, Deputy Assistant Attorney General, David M. Cohen, Director, Jeanne E. Davidson, Deputy Director, Jeffrey T. Infelise, Brian A. Mizoguchi, and Brian L. Owsley, of counsel.

## ORDER ON RECONSIDERATION

BRUGGINK, Judge.

We entered judgment in favor of the United States in this *Winstar*-related[1] case on June 3, 2004. *Coast–to–Coast Fin. Corp. v. United States*, 60 Fed.Cl. 707 (2004) (*"Coast III"*). The court had earlier found the United States liable to plaintiff, Coast–to–Coast Financial Corporation ("CTC"), for breach of contract under two independent theories. In *Coast–to–Coast Financial Corp. v. United States*, 52 Fed.Cl. 352 (2002) (*"Coast I"*), we held that passage of the "Guarini" legislation[2] constituted a breach of the assistance agreement entered into between CTC and the Federal Savings and Loan Insurance Corporation ("FSLIC") in connection with the acquisition by CTC of Lyons Savings Bank. In *Coast–to–Coast Financial Corp. v. United States*, 58 Fed.Cl. 327 (2003) (*"Coast II"*), we held that the adoption of FIRREA[3] constituted an independent breach of the assistance agreement. CTC's unified claim for restitutionary damages was addressed in *Coast III.* We held that plaintiff had failed to prove its claim for damages for either

breach. Following entry of judgment, the court reopened the case to consider plaintiff's motion for reconsideration. In addition, the court has reopened for the purpose of having the parties address the effects of the subsequent decision of the Federal Circuit in *Admiral Financial Corp. v. United States*, 378 F.3d 1336 (Fed.Cir.2004) (*"Admiral II"*) and of this court in *Yankee Atomic Electric Co. v. United States*, 2004 WL 1535688 (Fed.Cl. June 28, 2004). After considering the parties' briefing, we decline to reconsider the judgment on the grounds asserted by plaintiff, and we amend the rationale for the judgment in light of *Admiral II.*

## BACKGROUND

As explained more fully in our earlier decisions, this case arises out of the acquisition from the United States of a defunct thrift, Old Lyons, a federally chartered mutual association. Among the documents comprising the acquisition, there was an Assistance Agreement. Contemporaneous with the Assistance Agreement, a new financial institution, Superior Bank, was formed to receive the assets of Old Lyons. The only remaining plaintiff is CTC, the holding company for Superior Bank and a signatory to the agreement. Superior Bank closed in July 2001 and was taken over by the Federal Deposit Insurance Corporation ("FDIC").

Two breaches were asserted in the complaint. The first, a *Winstar* claim, was that the adoption of FIRREA constituted a breach of the promise made by the United States at the time of acquisition of the defunct bank that supervisory goodwill could be used to satisfy regulatory capital requirements. The second, a Guarini claim, was that there was an independent breach of contract resulting from the passage in 1993 of the "Guarini" legislation, which had the effect of eliminating part of the tax benefits upon which the transaction was predicated.

1. *United States v. Winstar Corp.*, 518 U.S. 839, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996).

2. This legislation, the Omnibus Budget Reconciliation Act of 1993, Pub.L. 103–66, § 13224, 107 Stat. 312, 485 (1993), is named for its primary sponsor, Representative Frank Guarini.

3. Financial Institutions Reform, Recovery, and Enforcement Act, Pub.L. No. 101–73, 103 Stat. 183 (1989).

We did not distinguish in *Coast III* between the two liability theories endorsed by the court. We assumed, for the sake of argument, that the government's breach was total and thus that it entitled CTC, if it wished, to claim a repudiation and entitlement to restitution. We nevertheless rejected restitution and, thus, all damages. The claim foundered, in our judgment, because CTC waived the right to claim a restitution remedy by continuing its performance.

## DISCUSSION

*Plaintiff's Motion for Reconsideration*

■ Plaintiff's motion for reconsideration focuses on the court's recitation of consideration flowing back and forth between the parties subsequent to Guarini and FIRREA. Plaintiff correctly points out that this recitation merges the consideration flowing to CTC with that flowing to its subsidiary, Superior Bank. Primarily on that basis, it seeks reconsideration.

Plaintiff's observation that the decision did not, at all points, distinguish between consideration flowing to the parent from that flowing to the subsidiary is correct.[4] It is not material to the outcome, however. The court's holding was that CTC lost the right to seek restitution by not declaring default and by continuing to accept performance by the government. It was sufficient, under the court's rationale, that *any* consideration flowed from the government to CTC.

From the outset in this litigation, it has been CTC's position that it was in direct privity with the government. We agreed. *See Coast I*, 52 Fed.Cl. at 356. Superior did not come into existence until the negotiations were effectively concluded. Whatever benefits flowed later to Superior were the result of CTC's negotiation of the Assistance Agreement. While it might have been important for some purposes to distinguish between obligations of and to the parent versus those of the subsidiary, those distinctions are

not outcome determinative in the context of CTC's restitution claim, which presumes an effort to place the parties back in a precontract status. All aspects of the acquisition, subsequent assistance, and tax sharing were inextricably linked. A key benefit flowing directly to CTC was the right to acquire Old Lyon (Superior). While Superior became the conduit for maintaining the debits and credits of financial assistance and tax sharing, the tax consequences ultimately flowed to CTC as parent. It would be highly unfair to the government to artificially isolate CTC's cash contribution without recognizing that what it facilitated was a range of benefits, not just to Superior, but also to CTC. One of those benefits was the continued ownership of Superior and its assets. CTC did not offer to return Superior or its assets to the government.

In short, a closer netting out of the pluses and minuses with respect to CTC was unnecessary because plaintiff elected to maintain the parties' contractual relationship. As we held in *Coast III*, "Only if there is a total breach or repudiation, *and if there is no waiver*, is it necessary to attempt to unscramble the reciprocal exchanges." 60 Fed. Cl. at 713 (emphasis added). Here, there was a waiver.

■ Plaintiff also contends that the court erred in accepting the waiver defense because no prejudice to the government had been demonstrated. We will assume that plaintiff is correct that prejudice must be proved. *See Dow Chem. v. United States*, 226 F.3d 1334, 1346 (Fed.Cir.2000).[5] It was, in any event, present. Despite the fact that the government was making its direct financial assistance payable to Superior, as explained above, this was the result of the overall agreement, by the terms of which CTC was able to purchase Old Lyons, set up Superior, and reap the benefits of the government's payments to Superior. The deal was not assembled piecemeal, nor could it be

---

4. Indeed, the court summarized the facts in the same fashion in its previous ruling on Guarini liability. *See Coast I*, 52 Fed.Cl. at 356 ("In return, CTC was provided with financial assistance ...."). CTC did not seek reconsideration of that aspect of the liability ruling.

5. *This issue also prompted plaintiff's notice of supplemental authority, referring to Yankee Atomic Elec. Co. v. United States*, 2004 WL 1535688 (Fed.Cl. June 28, 2004).

disassembled piecemeal. The payments to Superior, which were precipitated under the terms of the agreement between CTC and the government, continued because the overall arrangement continued. The government's payments to Superior have to be seen in context—they resulted from the ongoing relationship with CTC. The government plainly relied to its detriment on the fact that CTC did not attempt to disavow the agreement by maintaining its financial commitment to Superior.[6] The court declines to grant plaintiff's motion for reconsideration.[7]

### The Effect of Admiral II

In discussing the *Winstar*-based breach of contract claim in *Coast II,* we had occasion to construe the various contract documents. We noted that the Federal Home Loan Bank Board ("FHLBB"), in its resolution approving the merger and acquisition and in its subsequent forbearance letter, had assured the bank of its entitlement to apply supervisory goodwill toward satisfying regulatory capital requirements. The amount and amortization period were separately fixed at $23.8 million and ten years, respectively. We held that the adoption of FIRREA constituted a breach of that promise.

One of the liability defenses in *Coast II* was that CTC assumed the risk of the regulatory change embodied in FIRREA. We rejected that defense. In doing so, we cited the decision of this court in *Admiral Financial Corp. v. United States,* 54 Fed.Cl. 247 (2002), because the relevant contractual language in this case and that of *Admiral* was identical. We were persuaded by the reasoning of *Admiral,* as well as related decisions. *Admiral* was appealed and subsequently reversed on this very point. *Admiral II,* 378 F.3d at 1340–43. Defendant now asks the court to correct the decision in *Coast II* by assigning an additional rationale in *Coast III* for granting summary judgment for the United States. In effect, the government asks that we vacate the decision in *Coast II* insofar as liability is predicated on a FIRREA-based breach.

Plaintiff opposes defendant's request, contending that the decision in *Admiral II* is distinguishable. The argument is based, not on the language of the allegedly risk-shifting clause, but on other language in the present contract. Plaintiff points out that one of the contract documents in this case, the Dividend

---

**6.** The plaintiff also argues that, "The government makes no attempt even to show that it paid *more* money as a result of Coast-to-Coast's decision than it would have paid had Coast-to-Coast attempted to tender back Superior." (Pls. Reply Br. of Sept. 30, 2004, at 5.) We decline plaintiff's offer to enter into the thicket of calculating net costs. To the extent that prejudice is a requisite to proof of waiver, we hold that defendant is not obligated to reconstruct a fictional calculation of the relative financial consequences of CTC suing for breach or waiving the breach. We hold that there was sufficient material reliance by the government here, irrespective of whether either party guessed correctly about the precise consequences of breach or waiver. We note, in particular, that plaintiff's argument is based, in part, on the suggestion that the liabilities Superior assumed should be included in a calculation of prejudice. This approach has been rejected by the Federal Circuit. *See LaSalle Talman Bank, F.S.B. v. United States,* 317 F.3d 1363, 1376 (Fed.Cir.2003); *Glendale Fed. Bank, F.S.B. v. United States,* 239 F.3d 1374, 1383 (Fed.Cir.2001).

**7.** Plaintiff also points to the recent decision of Senior Judge Smith in *American Savings Bank, F.A. v. United States,* 62 Fed.Cl. 6 (2004), reject-

ing defendant's argument that plaintiffs had waived their rights to restitution by continuing performance:

> [A]ny benefits Plaintiffs continued to receive under the contract were derived from the Plaintiffs' attempts to preserve their remaining investment.... While Plaintiffs continued to operate the bank, they did not do so with the benefit of the Warrant Forbearance, the specific benefit relevant to the divisible contract in question. Furthermore, the Plaintiffs did make a concerted effort to unwind the contract and recover the Warrants by purchasing them back from the FDIC, but to no avail. The Government chose instead to keep the benefits it had received under the contract, in the form of the Warrant. Under these narrow circumstances, the Plaintiffs may, after the Government's breach, continue to receive benefits under the Agreement and seek restitution for the breach. Plaintiffs are not legally barred from seeking restitution damages as a result of their continued performance.

*Id.* at 16 (citations omitted). The two facts critical to Judge Smith's finding—that plaintiff was motivated by a desire to preserve its investment, and that it in fact attempted to unravel the contract—were not advanced here, however.

Agreement, limited Superior's ability to pay dividends if such payment "would cause [Superior's] Regulatory Capital to fall below its Regulatory Capital Requirement" but went on to provide that the regulatory requirement would be calculated "after giving effect to the forbearances provided in [the Forbearance Letter]." Plaintiff contends that this language, apparently not present in the *Admiral* facts, distinguishes the two cases on the theory that this reference to the forbearances provided elsewhere constitutes an independent assurance that the forbearances trump any changes in regulations.

We disagree. We conclude that it is impossible to square the result in *Coast II* with the Federal Circuit's opinion in *Admiral II*. The circuit court found the language of the risk-shifting clause to be controlling due to its specificity. The court found it to be unlike the more general language discussed in *Winstar*, 518 U.S. at 868–69, 116 S.Ct. 2432. The language here is identical. The secondary reference to the forbearances in the Dividend Agreement cannot, in our judgment, give additional substance to them. It is merely a reference, no more.

## CONCLUSION

We have considered plaintiff's other arguments in support of its June 16, 2004 motion for reconsideration and in opposition to defendant's request that *Coast II* be vacated. We find them unavailing. Accordingly, plaintiff's motion for reconsideration is denied. We grant defendant's request that the October 31, 2003 decision in *Coast II* be vacated. Accordingly, summary judgment is granted to the United States on CTC's FIRREA claim. The June 1, 2004 decision in *Coast III* denying relief to plaintiff is amended to reflect that plaintiff's damages claim is predicated exclusively on a Guarini theory. It is otherwise unaffected. The Clerk is directed to enter an amended judgment in accordance with the terms of this order.